IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM DAVID CARROLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:06-CV-549-MEF |
| ) | |
| ANTHONY CLARK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' SPECIAL REPORT AND ANSWER

Defendants, Millard McWhorter, M.D. (incorrectly identified in the Complaint as "Dr. McWaters") and Annette Cain, LPN (incorrectly identified as "Annett Cain"), submit their Special Report and Answer to the Court as follows:

### I.    INTRODUCTION

The plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama on June 20, 2006. On June 28, 2006, this Court ordered Defendants to submit a Special Report concerning the factual allegations made by the plaintiff in his Complaint.

### II.    PLAINTIFF'S ALLEGATIONS

The plaintiff alleges that the Defendants failed to provide adequate or appropriate medical attention in violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges that Defendants, Dr. Millard H. McWhorter, M.D. (hereinafter "Dr. McWhorter") and Annette Cain, LPN (hereinafter "Nurse Cain"), denied the plaintiff proper medical care by failing to treat the plaintiff's complaints of a toothache.[1]

---

[1] This statement of the plaintiff's allegations is based upon the plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendants an opportunity to answer and address those issues.

**III.    DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS**

Defendants deny the allegations made against them by the plaintiff as said allegations are untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. The plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, the plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the law.

**IV.    SWORN STATEMENTS**

Pursuant to Paragraph 2 of the Court's Order, Defendants submit the affidavits of Dr. McWhorter (Exhibit 1) and Nurse Cain (Exhibit 2), who are persons having knowledge of the subject matter of the Complaint. Defendants also refer the Court to the affidavit of Sheriff Anthony Clark, which is attached as Exhibit B to Co-Defendants' Special Report.

**V.    STATEMENT OF FACTS**

   **A.    Background**

   1.    Dr. McWhorter has been licensed to practice medicine in the State of Alabama since 1986. From January 1994 to July 1999, he was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, he was the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, he has been employed by Southern Health Partners, Inc. ("SHP") as the medical director of the Covington County Jail in Andalusia, Alabama. (McWhorter Aff. at ¶¶ 2-3.)

2. Nurse Cain is a licensed practical nurse. She obtained her L.P.N. degree in 1982 from McArthur State College in Opp, Alabama, and became licensed by the State of Alabama as an L.P.N. in 1982. From 1982 to 1985, she worked as an L.P.N. on the emergency room and surgery departments of Columbia General Hospital in Andalusia, Alabama. From 1985 to 1986, she worked as an L.P.N. for Dr. Joseph Herrod in Enterprise, Alabama, where her nursing care focused on behavioral modification. From 1986 to 1988, she was an L.P.N. at Opp nursing facility. From 1988 to 1990, she was an L.P.N. for Dr. Steven Price in Opp, Alabama, who had a private surgery practice. From 1990 to 1992, she was an L.P.N. at Oxford Home Health Care in Oxford, Alabama. From 1992 to 2005, she was an L.P.N. at Andalusia Manor Nursing Home. From September 2005 to the present, she has been employed as an L.P.N. for SHP at the Covington County Jail in Andalusia, Alabama. In late November 2005, she became medical team administrator. (Cain Aff. at ¶ 2.)

3. SHP provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of the plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, Dr. McWhorter was the medical director in the jail and Nurse Cain was the medical team administrator. (McWhorter Aff. at ¶ 4; Cain Aff. at ¶ 4.)

4. When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is

provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (McWhorter Aff. at ¶ 5; Cain Aff. at ¶ 5.)

### B. Chronology of the plaintiff's treatment

5. A true and correct copy of SHP's medical chart concerning the plaintiff is attached to Nurse Cain's Affidavit as Exhibit A. (Cain Aff. at ¶ 7.)

6. The plaintiff was booked into the Covington County Jail on November 19, 2005. On December 17, 2005, the plaintiff underwent a history and a physical, wherein he noted no problem with his teeth. (McWhorter Aff. at ¶ 8; Cain Aff. at ¶ 8.)

7. On January 4, 2006, the plaintiff completed a sick call slip, wherein he complained that a piece of his tooth broke off while eating supper. On January 5, 2006, Nurse Cain responded to the plaintiff's sick call, noting that his No. 18 molar had broken into his gum line and that the plaintiff was experiencing some pain. She placed the plaintiff on the inmate dental list and, pursuant to Dr. McWhorter's treatment protocol, ordered that the plaintiff receive ibuprofen 800 mgs. twice a day for 30 days for his pain. (McWhorter Aff. at ¶ 9; Cain Aff. at ¶ 9.)

8. After being placed on the dental list, the plaintiff was scheduled for a dental appointment on January 11, 2006, but the plaintiff refused to go to his appointment. The plaintiff was rescheduled for a dental appointment on February 1, 2006, and he again refused to attend the appointment. After his two refusals to see a dentist, the plaintiff was removed from the dental list. (McWhorter Aff. at ¶ 10; Cain Aff. at ¶ 10.)

9. From February 1, 2006 through June 11, 2006, the plaintiff completed no sick call slips and made no complaints of tooth problems. (McWhorter Aff. at ¶ 11; Cain Aff. at ¶ 11.)

10. On June 12, 2006, the plaintiff completed a sick call slip, complaining of a toothache. In his complaint in this lawsuit, the plaintiff alleges that he was denied adequate medical treatment in response to this sick call slip. That is not true. On June 15, 2006, Dianne Williams, LPN, saw the plaintiff in response to his toothache complaint. Ms. Williams noted that the plaintiff had an abscess to the back of his upper tooth. She placed the plaintiff on the inmate dental list. Moreover, pursuant to Dr. McWhorter's treatment protocol, the plaintiff received amoxil 500 mgs. twice a day for 7 days for the abscess and ibuprofen 600 mgs. twice a day for 7 days for the plaintiff's pain. The medical staff also approved the plaintiff's family to bring the plaintiff a mouth guard to help the plaintiff with problems grinding his teeth. (McWhorter Aff. at ¶ 12; Cain Aff. at ¶ 12.)

11. On June 17, 2006, Dianne Williams left a message on the plaintiff's sister's answering machine at home and on her cell phone that the plaintiff was requesting a mouth guard. (McWhorter Aff. at ¶ 13; Cain Aff. at ¶ 13.)

12. On June 23, 2006, the plaintiff completed a sick call slip, complaining that he still had a toothache and needed something for the pain. On June 27, 2006, Dianne Williams saw the plaintiff, and noted that he no longer had an abscess. Pursuant to Dr. McWhorter's treatment protocol, the plaintiff was prescribed ibuprofen 600 mgs. twice a day for 7 days to treat the plaintiff's complaints of pain. (McWhorter Aff. at ¶ 14; Cain Aff. at ¶ 14.)

13. On July 4, 2006, the plaintiff completed another sick call slip complaining of a toothache. Dianne Williams saw the plaintiff on July 5, 2006, noting that the plaintiff's right upper tooth was red and swollen. The plaintiff was again prescribed, pursuant to Dr. McWhorter's

treatment protocol, amoxil 500 mgs. twice a day for 7 days and ibuprofen 600 mgs. twice a day for 7 days. (McWhorter Aff. at ¶ 15; Cain Aff. at ¶ 15.)

14. On July 6, 2006, Nurse Cain entered a note, stating that the plaintiff had approached a nurse on pill call and requested that his ibuprofen be left with officers to dispense to him. Nurse Cain explained to the plaintiff that correction officers did not dispense medications and that pill call was twice a day. She also informed the plaintiff that he could buy ibuprofen from store call to have on hand. (McWhorter Aff. at ¶ 16; Cain Aff. at ¶ 16.)

15. On July 11, 2006, the plaintiff was up for his pill call. He took his medications, but when he walked away, he spit the pills out of his mouth and went back to his cell. Nurse Cain entered a note on July 11, 2006 describing this incident. (McWhorter Aff. at ¶ 17; Cain Aff. at ¶ 17.)

16. On July 13, 2006, the plaintiff complained of an "ongoing toothache." On July 14, 2006, Dianne Williams treated the plaintiff for his complaints. She noted that there were no signs or symptoms of infection. Pursuant to Dr. McWhorter's order, the plaintiff was prescribed Percogesic twice a day for 7 days. (McWhorter Aff. at ¶ 18; Cain Aff. at ¶ 18.)

17. On July 14, 2006, Nurse Cain entered a note stating that the plaintiff continued to refuse to order pain medication from store call. (McWhorter Aff. at ¶ 19; Cain Aff. at ¶ 19.)

18. On July 17, 2006, Nurse Cain entered a note describing an incident where the plaintiff was at the door for pill call and appeared to be pocketing his Percogesic dosage in his mouth. She requested that the plaintiff allow her to do a mouth check and he walked away. As he turned around, he opened his mouth and he had Percogesic between his tongue and cheek. One of these pills fell to the floor. (McWhorter Aff. at ¶ 20; Cain Aff. at ¶ 20.)

19. On July 23, 2006, the plaintiff complained that his tooth was swollen again and that he had a toothache. Nurse Cain saw the plaintiff on July 24, 2006, noting that the plaintiff's right upper last molar had a reddened gum. She noted no exudate or pus pockets. She noted that the plaintiff remained on the dental list and that he had chosen to have analgesics provided by the medical staff. Dr. McWhorter again ordered that the plaintiff receive Percogesic twice a day for seven days. (McWhorter Aff. at ¶ 21; Cain Aff. at ¶ 21.)

20. On July 26, 2006, the plaintiff was sent to Dr. Burkhardt, a local dentist, for a dentist consultation and a tooth extraction. (McWhorter Aff. at ¶ 22; Cain Aff. at ¶ 22.)

21. The plaintiff's medication administration record ("MAR") demonstrates that the plaintiff was administered all prescribed medication for his toothache. (McWhorter Aff. at ¶ 23; Cain Aff. at ¶ 23.)

### C. Dr. McWhorter and Nurse Cain were not deliberately indifferent to the plaintiff's medical needs.

22. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (McWhorter Aff. at ¶ 25; Cain Aff. at ¶ 25.)

23. On no occasion was the plaintiff ever at risk of serious harm, nor were Dr. McWhorter or Nurse Cain ever indifferent to any complaint that he made. (McWhorter Aff. at ¶ 26; Cain Aff. at ¶ 26.)

### D. The plaintiff failed to exhaust administrative remedies.

24. At the time of the plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure. (Clark Aff. at ¶ 4.) Grievances were required to be in writing and could be filed with any member of the jail staff. (*Id.*) Copies of grievance forms are kept in the inmate's

jail file. (*Id.*) Jail policy provided an exception that allowed emergency grievances to be made orally. (*Id.*) It was a violation of jail policy to deny an inmate access to the grievance procedure. (*Id.*. at ¶ 6.) The plaintiff was aware of the grievance procedure. (*Id.* at ¶ 5.) The plaintiff never filed a grievance related to any of his claims. (See Inmate File, attached as Exhibit A to Co-Defendant's Special Report.)

## VI. LEGAL ARGUMENT

### A. The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for His Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The plaintiff in this case has failed to utilize two separate and distinct administrative remedies available to him. As a result, his claims are barred.

First, the plaintiff failed to properly utilize the grievance procedures provided at the local level in the Covington County Jail to address his claims prior to the filing of this lawsuit. The Covington County Jail had a grievance procedure. (Clark Aff. at 4.) The plaintiff never filed a grievance related to any of his claims. (See Inmate File, attached as Exhibit A to Co-Defendant's Special Report.)

8

Second, the plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the State provides an administrative remedy that the plaintiff failed to exhaust and the plaintiff failed to exhaust the Covington County Jail grievance procedure, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

**B.     The plaintiff's claims against Dr. McWhorter and Nurse Cain are due to be dismissed, because the plaintiff has presented no evidence that Defendants were deliberately indifferent to a serious medical condition.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks,* 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County,* 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." (*Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. (*Id.* at 104.)

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although the plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

In this case, there is absolutely no evidence from which a jury could find that Dr. McWhorter or Nurse Cain acted with deliberate indifference to any serious medical need of the plaintiff. On the

contrary, the plaintiff's medical chart clearly demonstrates that all of his medical needs were addressed in a timely and appropriate fashion. With regard to the plaintiff's allegation that Dr. McWhorter and Nurse Cain failed to adequately treat the plaintiff's toothache, the plaintiff has presented no evidence demonstrating that the plaintiff's complaint of a toothache is one that was diagnosed by a physician as mandating treatment or that his problems were so obvious that even a lay person could recognize the necessity for medical attention. Indeed, the plaintiff's own actions indicate that his dental condition was not serious. His first complaint was on January 4, 2006. He was immediately seen by the nursing staff, and placed on a list to be transported to a dentist. (McWhorter Aff. at ¶ 10; Cain Aff. at ¶ 10.) Yet, on the date of his appointment – one week later – the plaintiff refused to go. (*Id.*) He was again scheduled for a dental appointment on February 1, 2006. (*Id.*) Again, he refused to go. (*Id.*) He certainly did not deem his condition to be serious. His next complaint was on June 12, 2006 – more than five months after his previous complaint. (McWhorter Aff. at ¶ 12; Cain Aff. at ¶ 12.) It is difficult, at best, to understand how the plaintiff would have let a serious medical condition linger for that long without seeking help. As such, the plaintiff's toothache clearly does not qualify as a "serious medical condition."

Even if the plaintiff's toothache did evidence a "serious medical condition," the testimony of Dr. McWhorter and Nurse Cain clearly demonstrates that the plaintiff was treated adequately for his toothache. When he initially complained of a broken tooth in January 2006, the plaintiff was twice scheduled to see a dentist and twice he refused. (McWhorter Aff. at ¶ 10; Cain Aff. at ¶ 10.) When he complained of a toothache again five months later, he was placed back on the dental list and was prescribed appropriate pain medication pursuant to Dr. McWhorter's treatment protocol. (McWhorter Aff. at ¶ 12; Cain Aff. at ¶ 12.) Thereafter, the plaintiff was transferred to see Dr.

Burkhardt, a local dentist, for a dentist consultation and a tooth extraction. (McWhorter Aff. at ¶ 22; Cain Aff. at ¶ 22.)

Both Dr. McWhorter and Nurse Cain have testified that all necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (McWhorter Aff. at ¶ 25; Cain Aff. at ¶ 25.) The plaintiff has failed to present any evidence or medical testimony rebutting this testimony and, in fact, has presented no evidence that the treatment provided him by Dr. McWhorter and Nurse Cain was somehow indifferent to his needs.

## VII.  REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

### A.  Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants move this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in a light most favorable to the nonmovant, However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves*, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299. "A reviewing court need not 'swallow

plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar*, 142 F.3d 26, 40 (1st Cir. 1998).

**B.     Motion for Summary Judgment**

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

/s/ Robert N. Bailey
Daniel F. Beasley
Robert N. Bailey, II

LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11 day of September, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott Wayne Gosnell, Esq.
Webb and Eley, P.C.
7475 Halcyon Pointe Road
P.O. Box 240909
Montgomery, AL 36124

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant:

William David Carroll
#203829A
P.O. Box 150
Mount Meigs, AL 36057

_____
Of Counsel