IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM DAVID CARROLL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:06-CV-549-MEF |
| | ) |
| ANTHONY CLARK, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF MILLARD McWHORTER, M.D.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Millard McWhorter, M.D.**, who, after first being duly sworn by me, deposes and states as follows:

1. My name is Millard McWhorter, M.D. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2. I obtained my medical degree from Meharry Medical College in Nashville, Tennessee in 1981. From 1981 to 1984, I performed a residency at Morehouse Family Practice Program at Southwest Community Hospital in Atlanta, Georgia. From January 1985 to May 1986, I was in private practice in Monticello, Georgia. From June 1986 to September 1992, I was the medical director at Red Level Medical Clinic in Red Level, Alabama. During this same timeframe, I was also a consultant to the Community Mental Health First Step Clinic for Alcohol and Drug Abuse in Red Level, Alabama. From September 1987 to April 1989, I was the chief of staff and medical director at Columbia Regional Medical Center in Andalusia, Alabama. From January 1989 to December 1992, I was a physician for Spectrum Emergency Services, where I worked in emergency

rooms in Georgia and Alabama. From October 1992 to December 1993, I was a staff physician for the Davis Medical Group in Huntsville, Alabama. From January 1994 to July 1999, I was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, I was the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, I have been employed by Southern Health Partners, Inc. ("SHP")as the medical director of the Covington County Jail in Andalusia, Alabama, and I have also been in private practice in Andalusia, Alabama.

3.     I am licensed to practice medicine in the State of Alabama and have been so since 1986. I am also licensed to practice medicine in the states of Georgia and Tennessee.

4.     SHP provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, I was the medical director in the jail and Annette Cain was the medical team administrator.

5.     When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

6.     As I understand the plaintiff's complaint in this case, the plaintiff alleges that Annette Cain ("Nurse Cain") and I denied him medical attention by failing to respond to his complaints of a toothache.

7. I have reviewed SHP's medical chart concerning the plaintiff.

8. The plaintiff was booked into the Covington County Jail on November 19, 2005. On December 17, 2005, the plaintiff underwent a history and a physical, wherein he noted no problem with his teeth.

9. On January 4, 2006, the plaintiff completed a sick call slip, wherein he complained that a piece of his tooth broke off while eating supper. On January 5, 2006, Nurse Cain responded to the plaintiff's sick call, noting that his No. 18 molar had broken into his gum line and that the plaintiff was experiencing some pain. She placed the plaintiff on the inmate dental list and, pursuant to my treatment protocol, ordered that the plaintiff receive ibuprofen 800 mgs. twice a day for 30 days for his pain.

10. After being placed on the dental list, the plaintiff was scheduled for a dental appointment on January 11, 2006, but the plaintiff refused to go to his appointment. The plaintiff was rescheduled for a dental appointment on February 1, 2006, and he again refused to attend the appointment. After his two refusals to see a dentist, the plaintiff was removed from the dental list.

11. From February 1, 2006 through June 11, 2006, the plaintiff completed no sick call slips and made no complaints of tooth problems.

12. On June 12, 2006, the plaintiff completed a sick call slip, complaining of a toothache. In his complaint in this lawsuit, the plaintiff alleges that he was denied adequate medical treatment in response to this sick call slip. That is not true. On June 15, 2006, Dianne Williams, LPN, saw the plaintiff in response to his toothache complaint. Ms. Williams noted that the plaintiff had an abscess to the back of his upper tooth. She placed the plaintiff on the inmate dental list. Moreover, pursuant to my treatment protocol, the plaintiff received amoxil 500 mgs. twice a day for 7 days for the abscess and ibuprofen 600 mgs. twice a day for 7 days for the plaintiff's pain. The medical staff

also approved the plaintiff's family to bring the plaintiff a mouth guard to help the plaintiff with problems grinding his teeth.

13. On June 17, 2006, Dianne Williams left a message on the plaintiff's sister's answering machine at home and on her cell phone that the plaintiff was requesting a mouth guard.

14. On June 23, 2006, the plaintiff completed a sick call slip, complaining that he still had a toothache and needed something for the pain. On June 27, 2006, Dianne Williams saw the plaintiff, and noted that he no longer had an abscess. Pursuant to my treatment protocol, the patient was prescribed ibuprofen 600 mgs. twice a day for 7 days to treat the plaintiff's complaints of pain.

15. On July 4, 2006, the plaintiff completed another sick call slip complaining of a toothache. Dianne Williams saw the plaintiff on July 5, 2006, noting that the plaintiff's right upper tooth was red and swollen. The plaintiff was again prescribed, pursuant to my treatment protocol, amoxil 500 mgs. twice a day for 7 days and ibuprofen 600 mgs. twice a day for 7 days.

16. On July 6, 2006, Nurse Cain entered a note, stating that the plaintiff had approached a nurse on pill call and requested that his ibuprofen be left with officers to dispense to him. Nurse Cain explained to the plaintiff that correction officers did not dispense medications and that pill call was twice a day. She also informed the plaintiff that he could buy ibuprofen from store call to have on hand.

17. On July 11, 2006, the plaintiff was up for his pill call. He took his medications, but when he walked away, he spit the pills out of his mouth and went back to his cell. Nurse Cain entered a note on July 11, 2006 describing this incident.

18. On July 13, 2006, the plaintiff complained of an "ongoing toothache." On July 14, 2006, Dianne Williams treated the plaintiff for his complaints. She noted that there were no signs

or symptoms of infection. Pursuant to my order, the plaintiff was prescribed Percogesic twice a day for 7 days.

19. On July 14, 2006, Nurse Cain entered a note stating that the plaintiff continued to refuse to order pain medication from store call.

20. On July 17, 2006, Nurse Cain entered a note describing an incident where the plaintiff was at the door for pill call and appeared to be pocketing his Percogesic dosage in his mouth. She requested that the plaintiff allow her to do a mouth check and he walked away. As he turned around, he opened his mouth and he had Percogesic between his tongue and cheek. One of these pills fell to the floor.

21. On July 23, 2006, the plaintiff complained that his tooth was swollen again and that he had a toothache. Nurse Cain saw the plaintiff on July 24, 2006, noting that the plaintiff's right upper last molar had a reddened gum. She noted no exudate or pus pockets. She noted that the plaintiff remained on the dental list and that he had chosen to have analgesics provided by the medical staff. I again ordered that the plaintiff receive Percogesic twice a day for seven days.

22. On July 26, 2006, the plaintiff was sent to Dr. Burkhardt, a local dentist, for a dentist consultation and a tooth extraction.

23. The plaintiff's medication administration record ("MAR") demonstrates that the plaintiff was administered all prescribed medication for his toothache.

24. All of the information contained herein is based upon my personal knowledge and the plaintiff's medical chart.

25. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care.

26. On no occasion was the plaintiff ever at risk of serious harm, nor was I ever indifferent to any complaint that he made.

_____
Millard McWhorter, M.D.

STATE OF ALABAMA        )
                        )
COUNTY OF Covington     )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Millard McWhorter, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the 8th day of September, 2006.

_____
Notary Public
My Commission Expires: MY COMMISSION EXPIRES SEPT. 25, 2009